UNITED TRUCK AND BUS SERVICE
COMPANY, Plaintiff, Appellant,

v.

Thomas A. PIGGOTT et al.,
Defendants, Appellees.

No. 76–1244.

United States Court of Appeals,
First Circuit.

Submitted Aug. 30, 1975.

Decided Nov. 3, 1976.

Paul M. Rockett, Attleboro, Mass., on brief for appellant.

John P. Lee, City Sol., Attleboro, Mass., on brief for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This is a diversity case involving a dispute over the meaning of a contract for the transportation of school children. Essentially plaintiff contends that its bid price of 16.58 cents per pupil per day was predicated on an understanding that there would be a guaranteed minimum of 4700 students per day to be transported. Defendants, on the other hand, say that the agreement between the parties contemplated that the charge for transportation services would be computed according to the following formula: $16.58 \times$ number of days $\times$ number of pupils actually transported.

After a jury waived trial, the district court concluded that the parties had not agreed that there would be a guaranteed minimum number of 4700 students and that "the plaintiff was entitled to be compensated only for the number of students

actually transported."[1] Accordingly the court entered judgment for the defendants, and this appeal followed.

We must first inquire as to our standard of review in a case of this nature. If the district court had only construed the written contract itself, its conclusions would be freely reviewable. *First National Bank of Miami v. Insurance Co. of North America*, 495 F.2d 519 (5th Cir. 1974); *Emor, Inc. v. Cyprus Mines Corp.*, 467 F.2d 770 (3d Cir. 1972). But in the present case the court clearly relied in part on "extrinsic evidence of the parties' intent" and therefore the clearly erroneous standard of Fed.R.Civ.P. 52(a) applies. *Martin v. Vector Company, Inc.*, 498 F.2d 16, 22 (1st Cir. 1974). *See West v. Smith*, 101 U.S. 263, 270, 25 L.Ed. 809 (1879); *Palmer v. Howard*, 493 F.2d 830, 835 (10th Cir. 1974); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2588 at 750–51 (1971). While we do not imply that we would disagree with the court's conclusions under any standard of review, they certainly pass muster under the clearly erroneous standard. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395–96, 68 S.Ct. 525, 92 L.Ed. 746

(1948); *Martin v. Vector Company, Inc., supra* 498 F.2d at 22.

Although we have reviewed the entire record in this case, we need not set forth here a detailed analysis of the evidentiary bases of the court's decision. *See Rivera Morales v. Benitez de Rexach*, 541 F.2d 882, 885 (1st Cir. 1976). We note, however, that the court properly gave considerable weight to the following items of testimonial and documentary evidence: inferences which it drew from the testimony of appellant's Executive Vice President; the fact that appellant's performance bond for the first year of the contract was apparently based on 4021 rather than 4700 students being transported; and the fact that for the first two months of the contract the appellant's bill was based on the number of students actually transported.[2] This extrinsic evidence was sufficient to enable the court to clarify whatever ambiguities were contained in the contract[3] and to conclude that "4700 as a guaranteed number of students to be transported was never agreed upon."

*Affirmed.*

1. The court in effect found that the written contract was ambiguous since the "Information and Instructions to Bidders" (which the signed "Agreement" incorporated by reference) states in § 3.2:

    "Each contractor shall furnish a performance bond each year equal to one hundred per cent (100%) of the cost of transporting the guaranteed minimum number of students for that year. . . . ."

    And § 6.2 of the same document states:

    "To help contractors in establishing routes, the Superintendent of Schools will give to each contractor before July 15th of each year the street addresses and names of pupils who might or might not require transportation. It is understood that the number of street addresses, names, etc., is only an approximation, and is not to be construed as the guaranteed minimum number for which transportation will be paid."

    Neither the "Information and Instructions" nor any other document in evidence, however, indicates what number would constitute the guaranteed minimum; and § 6.1 of the "Information and Instructions" states that "[t]he *estimated* number of students to be transported in . . . 1970–71" is 4802. (Emphasis added.)

Having determined that the contract was ambiguous in this regard—a finding with which we are in accord—the court properly looked to extrinsic evidence (including parol evidence) to help it to interpret the writing. *See Rizzo v. Cunningham*, 303 Mass. 16, 21, 20 N.E.2d 471, 474 (1939). *Cf. Gillentine v. McKeand*, 426 F.2d 717, 721 (1st Cir. 1970).

2. "[I]t is a fundamental rule of contract interpretation that great weight should be given the interpretation of the contract by parties thereto." *Acheson v. Falstaff Brewing Corp.*, 523 F.2d 1327, 1330 (9th Cir. 1975). *See Jamesbury Corp. v. Worcester Valve Co.*, 443 F.2d 205, 212 (1st Cir. 1971); *Lembo v. Waters*, 294 N.E.2d 566, 569 (Mass.App.1973).

3. Appellant also argues that the district court erred in not applying to this case the rule that "[i]f any reasonable doubt exist[s] concerning the parties' intention, the contract should be construed against the [party] which drafted it." *Massachusetts Turnpike Authority v. Perini Corp.*, 349 Mass. 448, 454, 208 N.E.2d 807, 812 (1965). However, given the plethora of extrinsic evidence which the court properly considered (*see* discussion *supra*), we do not believe that in this case there remained a reasonable doubt as to the parties' intention.