Philip A. ROLLINS, as the personal representative for the Estate of Alison Rollins, and Priscilla Rollins

v.

The BOARD OF GOVERNORS FOR HIGHER EDUCATION; Peterson Builders, Inc.; and the United States of America

v.

JOHN W. GILBERT ASSOCIATES, INC.

Civ. A. No. 88–0482P.

United States District Court, D. Rhode Island.

Oct. 17, 1990.

John T. Walsh, Jr., Providence, R.I., for plaintiffs.

Howard E. Walker, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Peterson Builders.

Irving A. Pianin, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Suzanne G. Curt, Asst. U.S. Atty., Providence, R.I., for the U.S.

Berndt W. Anderson, Roberts, Carroll, Feldstein & Peirce, Providence, R.I., Louis Saccoccio, Mary Kennard, Gen. Counsel, University of Rhode Island, Kingston, R.I., for Bd. of Governors.

Barbara S. Cohen, Goldenberg & Muri, Providence, R.I., Augustus F. Wagner, Jr., Nutter, McClennen & Fish, Hyannis, Mass., Leonard W. Langer, Marshall J. Tinkle, Thompson, McNaboe, Ashley & Bull, Portland, Me., for John W. Gilbert Associates, Inc.

MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This is an action brought by the parents of Alison Rollins under the Jones Act for negligence against the Board of Governors for Higher Education, under general maritime law, the Public Vessels Act and the Suits in Admiralty Act against the United States of America, and under the general maritime and products liability law against Peterson Builders, Inc. The Board and the United States filed a third-party complaint against John W. Gilbert Associates for contribution and indemnity.

Alison Rollins, the plaintiffs' decedent, was a seaman employed by the Board of Governors. On August 11, 1986, Alison Rollins was electrocuted while working on the ship end of the ship-to-shore power connection of the research vessel Endeavor. The Endeavor was owned by the United States of America and chartered to the Board of Governors. Defendant, Board of Governors for Higher Education now brings this motion under Fed.R.Civ.P. 56 for summary judgment on the basis of sovereign immunity. Alternatively, the Defendant asks this Court to limit any damage award pursuant to R.I.G.L. § 9–31–2. For the reasons set out below, this Court denies the motion for summary judgment on immunity grounds and finds that the question of any damage limitation is premature.

The issue of sovereign immunity goes to whether this Court has jurisdiction over the instant case. *Ainsworth Aristocrat In-*

*tern. Pty. v. Tourism Co.*, 818 F.2d 1034, 1036 (1st Cir.1987).

> When an action is brought against a public agency or institution, the application of the Eleventh Amendment depends upon whether the entity 'is to be treated as an arm [or alter ego] of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend.' " *Id.* (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977)).

Because this Court finds that the Board of Governors of Higher Education is not an arm of the state for sovereign immunity purposes, it is unnecessary to reach the question of waiver or the application of *Welch v. State Department of Highways and Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) to this case.[1] *See Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 572–73.

In the instant case, the defendant argues that sovereign immunity is a question of state law and that Rhode Island state courts have consistently found that the Board is a government entity, thereby protected by sovereign immunity. While this court agrees with the defendant that state law controls the issue of sovereign immunity, the Rhode Island case law that the defendant relies on is unpersuasive. *See, e.g. Chang v. U.R.I*, 118 R.I. 631, 375 A.2d 925 (1977), *In Opinion to the Governor*, 94 R.I. 464, 181 A.2d 618 (1962), *Powers v. Harvey*, 81 R.I. 378, 103 A.2d 551 (R.I. 1954). Although these cases do present some evidence with regard to the Rhode Island Supreme Court's perception of the status of the Board of Higher Education

and are illustrative of some factors that come into the "sovereign immunity equation", the cases do not address the immunity issue per se. Defendant expects this Court to reach the conclusion from these cases and summary affidavits that under Rhode Island state law, the Board of Higher Education is the alter ego of the state and thereby immune in federal court.

Defendant suggests that this Court should rely on this state court precedent and essentially ignore the exhaustive and well-reasoned opinion of Judge Selya in *Vanlaarhoven v. Newman* that specifically addresses the immunity issue. *See Vanlaarhoven*, 564 F.Supp. 145 (D.R.I.1983). In *Vanlaarhoven*, the court held that it must conclude that "URI is not an alter ego of the state for Eleventh Amendment purposes. While URI performs a 'traditional governmental function' in providing a college education for to (sic) Rhode Islandlanders at relatively modest cost, the statutory scheme graphically illustrates the General Assembly's design that the Board and URI function independently of state government." *Id.* at 149. Judge Selya discussed the factors to be considered in determining whether an agency is an arm of the state for sovereign immunity purposes. Those factors, gleaned from rulings of the First Circuit Court of Appeals and this Court include the following:

> the agency's capacity to sue and be sued, the extent to which an agency has autonomy over its operations, whether the agency performs a traditional governmental function and whether a judgment against an agency would be paid from the state treasury. *Id.* at 148 (citing *R.I. Affiliate Am. Civil Liberties Union v. R.I. Lottery Comm'n*, 553 F.Supp. 752, 763 (D.R.I.1982), *George R. Whitten, Jr.,*

---

**1.** Defendant argues that under *Welch*, the Eleventh Amendment bars this suit against a State in federal court. The Supreme Court, in that case, held that the Jones Act did not include an unmistakably clear expression of Congress' intention to abrogate State's immunity and that the Eleventh Amendment also bars admiralty suits. *Id.* 107 S.Ct. at 2945–47. Even if this Court had found that the Board is the alter ego of the State, *Welch* would not be conclusive. In *Welch*, the Court allowed for the possibility that

a State could consent to such suit. The question of whether Texas waived its sovereign immunity was not before the Court. *See id.* 107 S.Ct. at 2946. Thus, even if *Welch* applied, this Court would have to address the question of whether under Rhode Island law, the State has waived its immunity. *See Marrapese v. State of Rhode Island*, 500 F.Supp. 1207 (D.R.I.1980). That question, however, need not concern this Court today.

*Inc. v. State University Construction Fund,* 493 F.2d 177, 179–80 (1st Cir. 1974).... 'Only where an agency functions without meaningful fiscal and operational autonomy from the state can it partake of the state's Eleventh Amendment immunity.' *Vanlaarhoven,* 564 F.Supp. at 148 (citations omitted).[2]

Judge Selya did not ignore the proposition that state law controls the sovereign immunity issue. Applying the factors set out above he surveyed the Rhode Island statutes that established the Board and empowered the Board, he examined the Board's finances and even noted that the Supreme Court of Rhode Island had "explicitly held ... that a statutory provision giving a state agency the right to sue and be sued is of central import in ascertaining a waiver of sovereign immunity." *Id.* at 149–50 (citing *Rhode Island Turnpike and Bridge Authority v. Nugent,* 95 R.I. 19, 182 A.2d 427, 432 (1962). It is just such language that is used by the General Assembly in R.I.G.L. § 16–59–1, the statute that establishes the Board of Governors for Higher Education.[3]

The *Vanlaarhoven* opinion has been followed in this district by *University of Rhode Island v. A.W. Chesterton, Co.,* 721 F.Supp. 400 (D.R.I.1989). In *Chesterton,* Judge Lagueux found that URI was not the alter ego of the state and thus, the University was a citizen of the state subject to diversity jurisdiction. More to the point, however, is the fact that Judge Lagueux reviewed the *Vanlaarhoven* decision and found that Judge Selya's description of the "relationship between the University and the State of Rhode Island is as accurate today as when it was written in 1983 ... and his conclusion as to the inde-

pendent status of the University remains valid." *Id.* at 402. He then went on to describe the present statutory relationship and concluded that "there has been no material change since Judge Selya issued his 1983 opinion ... in the General Assembly's design and plan that the University function independently of the state government." *Id.* at 402–03.

Finally, the defendant suggests that this Court should look to the trends in other states with regard to sovereign immunity. The defendant cites to a 1987 federal district court decision in the Eastern District of Tennessee. *See University of Tennessee v. U.S. Fidelity & Guaranty Co.,* 670 F.Supp. 1379 (E.D.Tenn.1987). That court, like the court in *Vanlaarhoven* noted that the "independent or alter ego status of a political subdivision is generally determined by examining state law." *Id.* at 1383–84; *see Vanlaarhoven,* 564 F.Supp. at 148–50. Under Tennessee law, the court stated that the University of Tennessee was an arm of the state. The Tennessee legislature had, however, enacted a statute that specifically maintained the University's immunity in an amendment to its Tort Claims Act. *Id.* at 1384. Rhode Island has no such amendment. Moreover, regarding "trends," the defendant in the instant case points out that in the *University of Tennessee* opinion, the court was impressed with the defendant university's presentation of seventy-seven cases where courts have held universities were entitled to alter ego status. The court noted that only nine of the seventy-seven were contrary. *Id.* at 1387. The sole First Circuit case cited by the Tennessee court falls into the "contrary" category. That cited case is *Vanlaarhoven;* the

**2.** In *Ainsworth,* the First Circuit Court of Appeals reexamined the factors which should be considered in determining whether an agency is an arm of the state for sovereign immunity purposes. The *Vanlaarhoven* opinion is in accord with this more recent decision, stressing the importance of whether any judgment will have to be paid from the state treasury. *Compare Ainsworth,* 818 F.2d at 1037–38 *with Vanlaarhoven,* 564 F.Supp. at 148–50.

**3.** The section begins:

(a) There is hereby created a board of governors for higher education, sometimes hereinafter referred to as the "board" or the "board of governors", which shall be and hereby is constituted a public corporation, empowered to sue and be sued in its own name, to have a corporate seal, and to exercise all the powers, in addition to those hereinafter specifically enumerated, usually appertaining to public corporations entrusted with control of postsecondary educational institutions and functions.

case which specifically addresses the status of the Board under Rhode Island law.

This Court cannot look to trends in other states when, as defendant has pointed out, Rhode Island law controls the issue. I, therefore, conclude based on the legislation of the Rhode Island General Assembly and the continued validity of *Vanlaarhoven* that the Board of Governors of Higher Education is not an arm of the state and is, therefore, not entitled to immunity in this Court. The Defendant, Board of Higher Education's motion for summary judgment is accordingly denied.

Because this Court finds that Board is not the alter ego of the state for sovereign immunity purposes, it is unnecessary to address, at this time, the question of whether the Board of Governors of Higher Education is a political subdivision of the state with regard to the damage limitation provisions of R.I.G.L. §§ 9–31–1 and 9–31–2.[4] If the Board of Higher Education is found liable, this Court will then address the question of whether the Board's liability is limited. Until that time, the question of whether § 9–31–2 applies is premature.

Plaintiffs have asked for an award of costs and attorney's fees in view of the "frivolousness" of the Board's motion. Any action on this prayer shall be held in abeyance.

---

**4.** R.I.G.L. § 9–31–1. Tort liability of state.

The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9–1–25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; Provided, however, That any recovery in any such action shall not exceed the monetary limitations thereof set forth in the chapter.

R.I.G.L. § 9–32–2. Limitations of damages— State.

In any tort action against the state of Rhode Island, or any political subdivision thereof, any damages recovered therein shall not exceed the sum of one hundred thousand dollars ($100,000); Provided, however, That in all instances in which the state was engaged in a proprietary function in the commission of such tort, or in any situation whereby the state has agreed to indemnify the federal government or any agency thereof for any tort liability, the limitation on damages set forth in this section shall not apply.